## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE HOOKS and JEROME DOWE, on behalf of themselves and all others similarly-situated, | Civil Action |
| | No. 2:21-cv-1387 |
| Plaintiffs, | Judge Stickman |
| v. | |
| GREAT AMERICAN WELDING COMPANY, LLC and RILEY POWER GROUP, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

### AMENDED CIVIL CLASS ACTION COMPLAINT

Plaintiffs, George Hooks and Jerome Dowe, on behalf of themselves and all others similarly-situated, by undersigned counsel, file this Amended Civil Class Action Complaint against Defendants Great American Welding Company, LLC and Riley Power Group, LLC. Defendants failed to compensate Plaintiffs and other class member employees and former employees ("Class Members") for the time that Defendants mandated they spend waiting for and riding shuttle buses, and arriving on the worksite to perform required work before being paid, including but not limited to donning and doffing personal protective equipment. Class Members were not allowed to use their own means of transportation to reach the worksite, and had no control over the shuttles. Class Members also were not paid for all time on the worksite despite performing required tasks upon arrival.

Plaintiffs state as follows in support of their claims:

## I. Jurisdiction

1.  Plaintiffs commenced this action in the Court of Common Pleas of Allegheny County, which has original jurisdiction over this matter. Defendants have invoked this Court's jurisdiction pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). Plaintiffs contend that this Court lacks subject matter jurisdiction, and have filed a Motion to Remand [ECF No. 5] in support. Plaintiffs do not, and cannot, consent to the Court's subject matter jurisdiction, which is a non-waivable issue and can be raised at any time.

## II. Parties

2.  Plaintiff, George Hooks, is an adult individual who is a citizen of Goose Creek, South Carolina.

3.  Plaintiff Hooks was a W-2 employee of Defendant Great American Welding Company, LLC ("GAWCO") from on or about July 22, 2019 to October 23, 2019.

4.  During the time that Plaintiff Hooks worked for Defendant GAWCO, he resided in Robinson Township, Allegheny County, Pennsylvania.

5.  Plaintiff, Jerome Dowe, is an adult individual who is a citizen of Lincoln, Nebraska.

6.  Plaintiff Dowe was a W-2 employee of GAWCO from on or about July 7, 2019 to September 30, 2019, and again from on or about November 6, 2019 to February 21, 2020.

7.  During the time that Plaintiff Dowe worked for Defendant GAWCO, he resided in a hotel in Robinson Township, Allegheny County, Pennsylvania.

8.  Defendant GAWCO is a limited liability company with a principal place of business located in Pinehurst, North Carolina.

9.  Defendant, Riley Power Group, LLC ("Riley Power"), refers to itself publicly as a "sister company" of GAWCO, and refers to GAWCO as the "union arm" of Riley Power.

2

10. Riley Power exercised substantial control over Class Members' wages, hours, and employment.

11. GAWCO employees were provided Riley Power employee handbooks, and were expected to follow Riley Power rules and regulations.

12. Riley Power Group had the ability to hire and fire Class Members, and indeed did terminate Plaintiff Hooks' employment.

13. GAWCO and Riley Power are both limited liability companies whose sole member is RPG Co, LLC, another North Carolina limited liability company. All three companies maintain the same principal place of business, located at 100 Magnolia Road, Suite 2207, Pinehurst, North Carolina, 28374.

14. Riley Power constituted a joint employer with GAWCO of Plaintiffs and Class Members, and/or acted as an agent of GAWCO at all times relevant hereto.

15. As used herein, the "Class" and "Class Members" constitute all hourly employees of GAWCO and/or Riley Power for a period beginning three years prior to the filing of this Complaint and continuing to the time Defendants stopped employing employees at the pertinent worksite ("Job Site") in or around 2020, who were required to wait for and ride shuttle buses to and from the Job Site, and who were not paid for their time in doing so. Plaintiffs do not seek relief in connection with any claims made against Great Arrow Builders.

### III. Factual Background

16. Plaintiffs and Class Members worked as hourly employees for Defendants in Monaca, Pennsylvania on a worksite managed by Shell Chemical Appalachia, LLC, Bechtel Corporation, and Pennsylvania Chemicals ("the Job Site").

17. Plaintiffs and Class Members worked in non-exempt hourly positions, and were paid overtime wages at 1.5 times their regular hourly rate for some of the hours they worked.

18. Plaintiffs and Class Members were members of the National Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry.

19. Some terms and conditions of employment, but not Plaintiffs' specific rates of pay or hours, were governed by a National Specialty Agreement.

20. At the start of Plaintiffs' and Class Members' employment, Defendants agreed to pay them "straight time" for hours under 40 hours, and overtime for any additional hours, for all hours worked. See Exhibits 1 and 2.

21. The above agreement to pay Plaintiffs and Class Members for hours worked did not arise out of a collective bargaining agreement, but rather out of an employee handbook and a term sheet of employment, examples of which are attached as Exhibits 1 and 2.

22. Defendants did not provide sufficient parking spaces for Plaintiffs and Class Members to park at or near the Job Site, and specifically prohibited Plaintiffs and Class Members from parking at or near the Job Site.

23. On or around Plaintiffs' and Class Members' first day of work, they were assigned to specific offsite parking lots to park their cars, which were designated by color. There was also one offsite lot where Class Members not parking cars could be dropped off and picked up, the "white" lot.

24. Plaintiffs and the majority of other Class Members were assigned to the "orange lot" located at 801 Flaugherty Road, Coraopolis, Allegheny County, Pennsylvania.

25. After parking their cars or being dropped off, Plaintiffs and Class Members were required to take a shuttle bus to transport them to the Job Site.

26. At the start of the workday, Plaintiffs and Class Members were required to wait in line for shuttle buses, and then to board the shuttle buses on a "first come, first served" basis.

27. Plaintiffs and Class Members were sometimes required to wait in line before boarding shuttle buses near the start of the workday.

28. Plaintiffs and Class Members then were required to ride the shuttle bus to the jobsite.

29. Once onsite, Plaintiffs and Class Members were required to don personal protective equipment (PPE), to walk approximately 100 yards, and to stand in line before being compensated.

30. At times, Plaintiffs and Class Members were also required perform safety-related stretches and attend safety meetings before their official start time.

31. Plaintiffs and Class Members were required to be on the premises well in advance of their official start time to undertake the above duties. If Plaintiffs were to arrive at their official start times, they would have been considered late.

32. Defendants failed to pay Plaintiffs for all time onsite, including for time spent as set forth in Paragraphs 28 and 29 above. Rather, Defendants paid Plaintiffs and Class Members for work during their assigned shift time (e.g., 7:00 am to 5:30 pm), regardless of whether Plaintiffs performed compensable work before or after the start of their assigned shift time.

33. Near the end of the workday, Plaintiffs and Class Members were not compensated for part of the time spent doffing PPE, waiting for the shuttle bus, and riding the shuttle bus back to their assigned parking lots.

34. Plaintiffs and the majority of other Class Members who parked at the "orange lot" started and ended their workdays in Allegheny County. They were not compensated for any of the time they expended in Allegheny County waiting for the mandatory shuttle at the beginning of the

workday or for any of the time they expended being transported on the mandatory shuttle while in Allegheny County at both the beginning and the end of the workday.

35. Defendants recruited employees, including but not limited to Plaintiffs, from other states to move temporarily to Pennsylvania to work on the Job Site.

36. No public transportation existed to transport Plaintiffs and Class Members to and from the Job Site.

37. As such, Defendants knew that the vast majority of their employees would not have any means of transportation to and from work, other than to drive themselves to their assigned parking lots, and thereafter waiting for and riding the mandatory shuttle buses.

38. Moreover, even those few employees, if any, who could somehow circumvent the parking lots by having someone drop them off and pick them up were required to take a shuttle from the "white lot" to the Job Site, and then take a return shuttle back to this area.

39. As such, waiting for and riding a shuttle bus to and from the Job Site was a daily requirement of Plaintiffs' and all other Class Members' jobs.

40. As alleged, Plaintiffs and Class Members were not paid for the time they were required to spend waiting for the shuttle bus; on the shuttle bus; or for any other time they were obliged to expend on mandatory work duties such as donning personal protective equipment ("PPE") or spending time onsite until their assigned shift start time. Nor were they paid for the time after their assigned end time spent waiting for a shuttle bus, on the shuttle bus, or doffing PPE.

41. Plaintiffs and Class Members were not informed that they would not be paid for the time they were required to spend waiting for and riding the shuttle bus; donning and doffing PPE; spending time on the worksite; or waiting in line.

42. It was only when they received their first paychecks that Class Members may have come to realize that they were not being compensated for the above time.

43. Plaintiffs and Class Members never agreed not to be compensated for the time they were required to spend waiting for and riding the shuttle bus; spending time on the worksite; donning and doffing PPE; or waiting in line to clock in.

44. Most or all Class Members in most or all pertinent work weeks worked for at least forty compensated hours.

45. Plaintiffs Hooks and Dowe worked at least forty compensated hours in virtually every work week.

46. As such, most if not all of the uncompensated time that Plaintiffs and Class Members were required to spend waiting for and riding the shuttle buses, donning and doffing PPE, and spending time onsite, is compensable at a rate of 1.5 times their regular hourly rate.

47. Defendants did not pay Plaintiffs and Class Members for some or all of the time they were required to spend waiting for and riding shuttle buses, donning and doffing PPE, or spending time on the premises.

48. However, Defendants maintain "gate logs" showing the times that Plaintiffs and Class Members entered the shuttle buses; entered the worksite; and left the worksite. The gate logs reveal that Plaintiffs were onsite for longer times than they were paid. As such, Defendants possess at least partial data showing that Plaintiffs were not compensated for all time onsite.

49. Plaintiff Hooks and other Class Members complained repeatedly about Defendants' failure to pay them wages for the time they were required to spend waiting for and riding the shuttle bus.

50. Defendants took no action to correct their failure to pay Plaintiffs and Class Members for the time they were required to spend waiting for and riding the shuttle bus.

51. Instead, Defendants fired Plaintiff Hooks and two coworkers who complained about the failure to pay wages due to them.

52. Defendants explicitly prohibited employees from discussing compensation with anyone other than management. At the start of employees' employment, they stated in writing, "It is against GAWCO company policy to discuss compensation with anyone other except RPG-GAWCO management team. If asked, the correct response to compensation inquiries is, 'It is against GAWCO company policy to discuss compensation.'"

### IV. Class Allegations

53. Common questions of fact exist, such as whether:

   a. Plaintiffs and all Class Members worked on the same Job Site;

   b. Plaintiffs and all Class Members were required to wait for and ride a shuttle bus to and from the Job Site;

   c. Plaintiffs and all Class Members were not paid for the time spent waiting for and riding the shuttle bus to and from the Job Site; and

   d. Plaintiffs and all Class Members were not paid for donning and doffing PPE nor for other required time spent at the Job Site.

54. Common questions of law exist, including whether:

   a. the time spent waiting for and riding the shuttle bus; donning and doffing PPE; and waiting in line to clock in constitutes "hours worked" under the Pennsylvania Minimum Wage Act;

  b. Defendants agreed to pay wages for said hours worked under the Pennsylvania Wage Payment and Collection Law; and

  c. Defendants were unjustly enriched by Plaintiffs' uncompensated time.

55. The class is so numerous that joinder of all members is impracticable.

56. The Class is readily identifiable by Defendants based on their employment and payroll records.

57. The claims and defenses applicable to Plaintiffs' claims are typical of the claims and defenses of the Class because Plaintiffs and Class Members were subjected by Defendants to the same requirements and payment practices with respect to waiting for and riding shuttle buses and donning and doffing PPE. Plaintiffs and Class members have sustained similar damages and bring claims arising from the same factual background.

58. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Plaintiffs will vigorously pursue Class Members' claims and have and/or can acquire the financial resources to litigate this class action. Plaintiffs' interests are coincident with those of the Class, and Plaintiffs have no conflicts with other Class Members.

59. A class action provides a fair and efficient method for adjudicating this controversy, because:

  a. Common questions of law and fact predominate over any question affecting only individual members;

  b. The size of the class is not likely to result in significant difficulty in managing the class action;

  c. The prosecution of separate actions would create the risk of adjudications with respect to individual members of the class which would as a practical matter be

      dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

   d. No litigation as to this claim has already been commenced by members of the class;

   e. This forum is appropriate for litigation of the claims of the entire class, given that, inter alia, Plaintiffs as well as a majority of Class Members started and ended their workday in Allegheny County and were not compensated for substantial time they were required to expend in Allegheny County;

   f. In light of the complexities of the issues and the expenses of litigating the issues raised in this case, the separate claims of individual class members are insufficient in amount to support separate actions;

   g. The amount which may be recovered by individual class members will not be so small in relation to the expense and effort of administering the action as not to justify a class action.

**COUNT I**
**PENNSYLVANIA MININUM WAGE ACT**

60. Plaintiffs incorporate the allegations of Paragraphs 1 through 53 as if fully restated.

61. GAWCO was an employer of Plaintiffs and Class Members within the meaning of the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. § 333.103.

62. Riley Power acted directly or indirectly in the interest of GAWCO with respect to Plaintiffs and Class Members, including as it related to policies and procedures regarding the payment of wages.

63. As such, Riley Power is an employer within the meaning of the PMWA.

64. The time Plaintiffs and Class Members were required to spend waiting for and riding on shuttle buses; donning and doffing PPE; and spending required time onsite constitutes "hours worked" within the meaning of the PMWA, 43 Pa. Stat. § 333.104 and 34 Pa. Code § 231.1.

65. Defendants failed to pay Plaintiffs and Class Members for all hours worked in excess of forty hours in a given workweek at a rate of at least 1.5 times their regular rate, in violation of the PMWA, 43 Pa. Stat. § 333.104(c).

66. As a direct and proximate result of Defendants' failure to pay Plaintiffs and Class Members wages, including overtime wages, for hours worked, Plaintiffs and Class Members have suffered damages, including but not limited to lost wages and lost social security benefits, Medicare benefits, and pension contributions.

WHEREFORE, Plaintiffs respectfully request judgment in his favor and on behalf of Class Members in an amount exceeding $35,000, and the following relief:

   a. The full amount of all wages that Defendants failed to pay Plaintiffs and Class Members for all hours worked, including at a rate of 1.5 times their regular rate for overtime hours as appropriate;

   b. The full amount of all associated lost pension, social security, and Medicare contributions, as well as the full amount of any other lost benefits;

   c. Prejudgment interest;

   d. Reasonable attorneys' fees and costs; and

   e. Such other relief as this Court may deem just and proper.

## COUNT II
## WAGE PAYMENT AND COLLECTION LAW

67. Plaintiffs incorporate the allegations of Paragraphs 1 through 60 as if fully restated.

68. Through an employee handbook and a terms and conditions of employment sheet, Defendants agreed to pay Plaintiffs and Class Members their regular rate for all hours worked

11

under 40 hours, and further agreed to pay them overtime wages for hours in excess of 40 hours in any given week.

69. Defendant GAWCO is an "employer" within the meaning of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. § 260.2a, because it employed Plaintiffs and Class Members within the Commonwealth of Pennsylvania.

70. Defendant Riley Power Group acted as an agent of GAWCO and therefore was an employer within the meaning of the WPCL.

71. Pursuant to the WPCL, 43 Pa. Stat. § 260.3(a), Defendants were required to pay Plaintiffs wages for all hours worked by each regular pay day.

72. However, Defendants refused to compensate Plaintiffs and Class Members for all hours worked, at their regular rate for hours under 40, and/or their overtime rate for hours over 40.

73. Defendants' failure to pay Plaintiffs and Class Members all wages due and owing is a violation of 43 Pa. Stat. §260.3(a).

74. More than 30 days have passed since Plaintiffs and Class Members' regularly scheduled pay days.

75. Defendants' failure to pay Plaintiffs and Class Members for all hours worked is not based on a good faith dispute as to their entitlement to wages.

76. Therefore, pursuant to 43 Pa. Stat. § 260.10, Plaintiffs and Class Members are also entitled to liquidated damages as permitted by 43 Pa. Stat. § 260.10.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount exceeding $35,000 and

    a.  The full amount of all wages that Defendants failed to pay Plaintiffs and Class Members for all hours worked, including at a rate of 1.5 times their regular rate for overtime hours;

    b.  The full amount of all lost pension and social security, and Medicare contributions;

    c.  Prejudgment interest;

    d.  Liquidated damages pursuant to 43 Pa. Stat. § 260.10;

    e.  Reasonable attorneys' fees and costs;

    f.  Such other relief as this Court may deem just and proper.

## COUNT III
## UNJUST ENRICHMENT
**(Pleaded in the Alternative to Count II)**

77.    Plaintiffs incorporate the allegations of Paragraphs 1 through 70 as if fully restated.

78.    By spending time waiting for and riding on the shuttle bus; donning and doffing PPE; spending required time onsite; and waiting in line, Plaintiffs and Class Members conferred a benefit on Defendants.

79.    Defendants appreciated the benefit conferred upon them by Plaintiffs and Class Members.

80.    Defendants accepted and retained the benefits conferred upon them by Plaintiffs and Class Members in a manner that would make it inequitable to retain the benefit of Plaintiffs' and Class Members' time without compensating them.

81.    As such, to the extent that Defendants are not liable under the WPCL for any reason, Defendants were unjustly enriched by Plaintiffs' time.

WHEREFORE, Plaintiffs demand judgment against Defendant in an amount exceeding $35,000 and

a. The full amount of all wages that Defendants failed to pay Plaintiffs and Class Members for all hours worked, including at a rate of 1.5 times their regular rate for overtime hours;

b. The full amount of all lost pension and social security, and Medicare contributions;

c. Prejudgment interest;

d. Reasonable attorneys' fees and costs; and

e. Such other relief as this Court may deem just and proper.

Respectfully submitted,

ELZER LAW FIRM, LLC

/s/ Christine T. Elzer
Christine T. Elzer
Pa. I.D. No. 208157
Mark A. Johnson
Pa. I.D. No. 308296
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
(412) 230-8436
(412) 206-0855
celzer@elzerlaw.com
mjohnson@elzerlaw.com

FEINSTEIN DOYLE PAYNE
 & KRAVEC, LLC

Pamina R. Ewing (PA No. 59244)
Ruairi McDonnell (PA No. 316998)
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone:  412-281-8400
Fax:  412-281-1007
Email: pewing@fpdklaw.com
         rmcdonnell@fdpklaw.com

Attorneys for Plaintiffs
and the proposed Class